Anna Y. Park, CA SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, CA SBN 286260
nakkisa.akhavan@eeoc.gov
Taylor Markey, CA SBN 319557
taylor.markey@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 785-3083
Facsimile: (213) 894-1301

Connie K. Liem, TX SBN 791113
connie.liem@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
555 West Beech St., Suite 504
San Diego, CA. 92101
Telephone: (619) 900-1617
Facsimile: (619) 557-7274

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>DTG LAS VEGAS, LLC; FIFTH STREET GAMING, LLC; and DTG LAS VEGAS MANAGER, LLC dba DOWNTOWN GRAND HOTEL & CASINO, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT-ADA**<br>• **Disability Discrimination**<br>• **Denial of Reasonable Accommodation**<br>• **Retaliation**<br>• **Interference with Rights**<br><br>42 U.S.C. §§ 2000e, *et seq.*<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendment of 2008 ("ADAAA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to the Charging Parties and a class of aggrieved individuals (collectively  the "Claimants") that were adversely affected by such practices. As set forth in detail in this Complaint, Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff" or "Commission") alleges that Defendants DTG Las Vegas, LLC, DTG Las Vegas Manager, LLC, and Fifth Street Gaming, LLC (collectively, "Defendants") subjected Claimants to disability discrimination including discharge and failure to provide reasonable accommodation, culminating in constructive discharge in violation of the ADA. All the Claimants are qualified individuals with disabilities. The Commission also alleges that Defendants subjected Claimants to adverse employment actions such as pretextual scrutiny of work performance, discipline, and discharge in retaliation for engaging in activity protected by the ADA, and otherwise interfered with rights in violation of the ADA.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Nevada.

## PARTIES

3.    Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff" or "Commission") is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA. Plaintiff is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

<u>DTG Las Vegas, LLC</u>

4.    At all relevant times, Defendant DTG Las Vegas, LLC, a Nevada corporation, has continuously been doing business in the State of Nevada and the City of Las Vegas, and has continuously had at least 15 employees.

5.    At all relevant times, Defendant DTG Las Vegas, LLC has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6.    At all relevant times, Defendant DTG Las Vegas, LLC has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

<u>Fifth Street Gaming, LLC</u>

7.    At all relevant times, Defendant Fifth Street Gaming, LLC, a Nevada corporation, has continuously been doing business in the State of Nevada and the City of Las Vegas, and has continuously had at least 15 employees.

8.    At all relevant times, Defendant Fifth Street Gaming, LLC has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

9.    At all relevant times, Defendant Fifth Street Gaming, LLC has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

<u>DTG Las Vegas Manager, LLC</u>

10.    At all relevant times, Defendant DTG Las Vegas Manager, LLC, a Nevada corporation, has continuously been doing business in the State of Nevada and the City of Las Vegas, and has continuously had at least 15 employees.

11.    At all relevant times, Defendant DTG Las Vegas Manager, LLC has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

12.    At all relevant times, Defendant DTG Las Vegas Manager, LLC has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

13.    At all relevant times since at least 2019, Defendants have been collectively operating as a direct employer, joint employers, and/or an integrated enterprise. Specifically, Defendants have common management and ownership, centralized control of labor operations, and interrelation of operations as Defendants:

      a.  collectively and/or jointly manage and operate a hotel and casino at 206 N. 3rd Street, Las Vegas, Nevada 89101;

      b.  share centralized control of labor operations at 206 N. 3rd Street, Las Vegas, Nevada 89101;

      c.  operate under the common management and financial control of Chief Executive Officer/Manager Seth Schorr and Director of Human Resources Kevin Donnelly;

      d.  share human resources functions such as payroll and employee benefits;

      e.  share personnel forms and employment policies; and

      f.  share employees.

14.    All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise, or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved, and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever

reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

15.    Plaintiff is ignorant of the true names and capacities of each Defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues defendant(s) by fictitious names.  The EEOC reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known.  Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## ADMINISTRATIVE PROCEDURES

16.    More than thirty days prior to the institution of this lawsuit, Charging Party A and Charging Party B filed charges of discrimination with the Commission alleging violations of the ADA by Defendants against them and a class of aggrieved individuals on the basis of disability, as well as retaliation.

17.    Defendants received notice of these charges of discrimination, and participated in the Commission's investigation, including by responding to the Commission's requests for information position statements, information, and documents.

### Charging Party A

18.    On or about February 21, 2021, the Commission issued the Letter of Determination regarding Charging Party A's Charge, finding reasonable cause to believe that Defendants violated the ADA with respect to Charging Party A and a class of individuals and invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

19.    On or about April 20, 2021, Charging Party A passed away.

20.    On or about April 27, 2021, the Commission notified Defendants in writing that Charging Party A had passed away.

21.    The Commission continued the administrative processing of Charging Party A's charges of discrimination, having received the consent of his surviving wife.

22.    The Commission engaged in further conciliation communications with Defendants and provided Defendants the opportunity to remedy the discriminatory practices as described in the Letter of Determination for Charging Party A. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

23.    On or about June 23, 2021, the Commission issued to Defendants a Notice of Failure of Conciliation on Charging Party A's charges of discrimination advising Defendants that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

24.    All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>Charging Party B</u>

25.    On or about July 7, 2022, the Commission issued the Letter of Determination regarding Charging Party B's Charge, finding reasonable cause to believe that Defendants violated the ADA with respect to Charging Party B and a class of individuals and invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

26.    The Commission engaged in conciliation communications with Defendants and provided Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination on terms acceptable to the Commission.  The Commission was unable to secure from Defendants a

conciliation agreement acceptable to the Commission for Charging Party B's charge of discrimination.

27.     On or about September 9, 2022, the Commission issued to Defendants a Notice of Conciliation Failure for Charging Party B's charge, advising Defendants that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

28.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS
## Disability Discrimination Claims

29.     Since at least 2018, Defendants have engaged in unlawful employment practices in violation of Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§12112 (a) and (b)(5)(A) against two Charging Parties and a class of other aggrieved employees.

### Charging Party A

30.     Charging Party A was a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).  Having been employed as an Executive Casino Host at Defendants' facility "The Downtown Grand Hotel & Casino" since 2015, Charging Party A possessed the requisite skill, experience, and education, and was performing all the essential job functions of the Executive Casino Host position with or without reasonable accommodation. The essential job functions included meeting and greeting VIP guests, booking reservations for guests, creating and building a guest database, marketing the hotel and casino attractions to repeat VIP guests, and creating events to bring in guest bookings. During the course of his employment, Charging Party A received pay raises and bonuses for his good work performance.

31.     Since April 2019, Charging Party A suffered from an actual and record of impairment, Stage 4 colon cancer that, among other things, substantially

limited the major life activity of relieving oneself of bodily waste. Moreover, this physical impairment substantially limited the major bodily operations involving Charging Party A's digestive, genitourinary, bowel, and bladder systems.

32.     On April 23, 2019, Charging Party A started feeling very ill. He called in sick and was admitted to the hospital where underwent an emergency colostomy the next day.

33.     Charging Party A was discharged from the hospital on April 29, 2019 and was medically required to wear an ostomy bag under his shirt at all times to collect bodily waste. He was subsequently diagnosed with colon cancer. Charging Party A gave notice to DTG of his diagnosis and provided a doctor's note to Kevin Donnelly, DTG's Director of Human Resources, which stated he could return to work with no restrictions.

34.     One month later, on or about May 15, 2019, Charging Party A returned to work wearing his uniform and an ostomy bag under his shirt. Upon his return, Donnelly, directed Charging Party to show him the ostomy bag under his shirt. Immediately after Donnelly saw the ostomy bag, he fired Charging Party A, explaining that it was not safe for him and other employees to be working near an ostomy bag.

35.     On May 21, 2019, Donnelly wrote a memo to Charging Party A's personnel file stating that the Downtown Grand Hotel and Casino "feel[s] it is in the best interest of safety and well-being" that Charging Party A "not return to work at the present time." Through Donnelly's actions, comments, and written statements, Defendants relied upon Charging Party A's disability as the reason for his termination.

Charging Party B

36.     Charging Party B is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).  Having been employed as a Table Dealer at Defendants' facility "The Downtown Grand

Hotel & Casino" since October 2013, Charging Party B possessed the requisite skill, experience, and education, and was performing all the essential job functions of the Table Dealer position with or without reasonable accommodation. These essential job functions included dealing multiple games, providing prompt, accurate, and courteous service to players, explaining aspects of the game to patrons, and maintaining awareness of property-wide events to market to guests. Since at least early 2019, Charging Party B has an actual and record of impairment, torn herniated discs and sciatica, that substantially limited major life activities that include sitting, bending, reaching, lifting, and sleeping, among other things. Moreover, this physical impairment substantially limited the major bodily operations involving Charging Party B's musculoskeletal system.

37.    From October 2013 to late January 2019, Charging Party B was primarily assigned to the Craps table, an assignment that allowed him to continue working in light of his back impairment and physical limitations. Working at the Craps table allowed Charging Party B to avoid constant bending and reaching, and to prop himself on the edge of the table for support. Assignment to the Craps table also gave him the choice to either sit or stand at will, and to freely move his body to relieve back pain and pressure.

38.    On or about February 1, 2019, Defendants' manager Amanda Hanson reassigned Charging Party B to the Blackjack table. Shortly thereafter, Charging Party B requested to be reassigned back to working the craps table as a reasonable accommodation because the prolonged standing, and constant bending and reaching while dealing cards at the Blackjack table was exacerbating his back pressure and causing pain. Defendants denied Charging Party B's request for this reasonable accommodation and did not further engage in the interactive process to attempt to find any alternative reasonable accommodations.

39.    Sometime during March 2019, Charging Party B requested to be placed on a part-time work schedule where he would work four consecutive days

with three days off ("4/3 work schedule") as a reasonable accommodation in order to have three (3) consecutive days off to fully recover after working the Blackjack table for four (4) consecutive shifts. Charging Party B also provided Defendants with a doctor's note asking that he avoid dealing cards due to back pain and sciatica.

40.    However, Hanson denied Charging Party B a 4/3 work schedule and told him that "we [DTG] don't have to accommodate you." She started to regularly subject him to threats of discipline and pretextual scrutiny of his work performance.

41.    Sometime in late March 2019, Charging Party B again requested to be reassigned to the Craps table as a reasonable accommodation and complained to Donnelly that working the Blackjack table was hard on his back and causing more intense pain to the point that Charging Party B required the use of a walking cane. Because he was forced to continue working the Blackjack table for five consecutive eight (8) hour shifts, Charging Party B's back impairment worsened. He could no longer tolerate the resulting back pain and working conditions, culminating in his constructive discharge.

<u>Other Class Members</u>

42.    Apart from the Charging Parties, Defendants also subjected a class of aggrieved individuals to disability discrimination, including but not limited to failing to adequately and effectively engage in the interactive process, failing to provide reasonable accommodations for the aggrieved individuals' known disabilities and limitations, and subjecting them to constructive discharge in violation of the ADA. For example, Defendants failed to provide the reasonable accommodation of an adjustable desk chair to a class member with levoscoliosis and failed to engage in the interactive process with him, leading to his constructive discharge. The class of aggrieved individuals were all qualified for their respective positions and able to perform all of their essential job functions with or without

reasonable accommodation(s). When these aggrieved individuals placed the employer on notice of their disability and/or requested a reasonable accommodation, DTG failed and refused to provide a reasonable accommodation and/or engage in the interactive process as required by the ADA.

## **Retaliation and Interference with Rights Claims**

43.    Since at least 2019, Defendants have engaged in unlawful employment practices in violation of Section 503 (a) and (b) of Title I of the ADA, 42 U.S.C. §12203 (a) and (b), by subjecting Claimants to retaliation for engaging in protected activity and interfering with their exercise and enjoyment of rights under the ADA. For example:

44.    After Charging Party A engaged in protected activity by a) seeking reinstatement in May 2019, b) filing an EEOC charge of discrimination on August 7, 2019, and c) seeking seven (7) months of back pay from Defendants, he was subjected to pretextual discipline and discharged on February 27, 2020 in retaliation in violation of Section 503(a) of the ADA.

45.    After Charging Party A exercised his rights by a) seeking reinstatement in May 2019, b) filing an EEOC charge of discrimination on August 7, 2019, and c) seeking seven (7) months of back pay from Defendants, Defendants interfered with the enjoyment and exercise of his rights by threatening to discharge him, and then subjecting him to pretextual discipline and actual discharge on February 27, 2020 in violation of Section 503(b) of the ADA.

46.    After Charging Party B engaged in protected activity and exercised his rights by requesting reasonable accommodation(s) during February and March 2019, Defendants retaliated and interfered with his rights by subjecting him to pre-textual over-scrutiny of his work performance and threats of unfair discipline in violation of Sections 503 (a) and (b) of the ADA.

47.    The effect of the practices complained of above has been to deprive the Charging Parties and other aggrieved individuals of equal employment

opportunities and otherwise adversely affect their working conditions because of disability.

48.    The unlawful employment practices complained of above were intentional.

49.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Charging Parties and other aggrieved individuals.

## **PRAYER FOR RELIEF**

The Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert or participation with each of them, from engaging in any employment practices in violation of Sections 102, 107, and 503 of the ADA.

B.    Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees with disabilities, and which eradicate the effects of its past and present unlawful employment practices and to ensure that it does not engage in further unlawful practices in violation of Sections 102, 107, and 503 of the ADA.

C.    Order Defendants to make the Claimants whole by providing back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of these unlawful employment practices.

D.    Order Defendant(s) to make the Claimants whole, where appropriate, by providing compensation for past and future pecuniary losses, including but not out-of-pocket expenses suffered by her which resulted from the unlawful employment practices described above in the amounts to be determined at trial.

E.    Order Defendant(s) to make the Claimants whole by providing compensation, where appropriate, for non-pecuniary losses resulting from the

unlawful employment practices described above in amounts to be determined at trial.  The non-pecuniary losses include emotional pain, suffering, inconvenience, mental anguish, humiliation and loss of enjoyment of life, in amounts to be determined at trial.

      F.     Order Defendant(s) to pay the Claimants, where appropriate, punitive damages for its malicious and/or reckless conduct as described above in amounts to be determined at trial.

      G.     Grant such further relief as the Court deems necessary and proper in the public interest.

      H.     Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

      The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: _____April 6_____, 2023     Respectfully submitted,

                             GWENDOLYN YOUNG REAMS
                             Acting General Counsel

                             CHRISTOPHER LAGE
                             Deputy General Counsel

                             U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
                             131 "M" Street, N.E.
                             Washington, D.C. 20507

By:    _____
ANNA Y. PARK,
Regional Attorney
Los Angeles District Office
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION